1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STELLA B. DURAN,

                    Plaintiff,

     v.

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

                   Defendant.

CASE NO.  10cv5092JRC

ORDER

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local

Magistrate Judge Rule MJR 13. (See also Notice of Initial Assignment to a U.S. Magistrate

Judge and Consent Form, ECF No.  4; Consent to Proceed Before a United States Magistrate

Judge, ECF No. 9.) This matter has been fully briefed. (See ECF Nos. 18, 31, 35.)

After considering and reviewing the record, the undersigned finds that the ALJ failed to

evaluate properly the medical evidence provided by multiple treating physicians; and, failed to

evaluate properly the plaintiff's credibility.  Therefore, this Court REVERSES AND REMANDS

1    this case for further consideration by the Social Security Administration pursuant to sentence
2    four of 42 U.S.C. § 405(g).

### BACKGROUND

5    Plaintiff was born on November 22, 1962. (Tr. 140.) She completed high school, and four
6    years of college in the Philippines. (See Tr. 41.) Records indicate that after plaintiff came to this
7    country from the Philippines in 1993, she worked every year from 1994 until 2007. (See Tr.
8    151.) She stopped working on a full-time basis on March 5, 2007, when she "fell down . . . .
9    and they took [her] to the hospital." (Tr. 42.) According to plaintiff, "from that time on, I wasn't
10   able to go back to work anymore." (Id.)

### PROCEDURAL HISTORY

13   Plaintiff filed an application for a period of disability and disability insurance benefits
14   under Title II of the Social Security Act (hereinafter "the Act"), 42U.S.C. § 423 (Title II), and an
15   application for Supplemental Security Income benefits under 42 U.S.C. § 1382(a), (Title XVI)
16   on April, 2007. (See Tr. 140, 147.) She alleged disability onset of February 16, 2007, but at her
17   June 4, 2009 hearing amended this date to March 5, 2007. (Tr. 42, 53.) Plaintiff's claim was
18   denied initially on June 17, 2007 and upon reconsideration on August 30, 2007. (Tr. 80, 85.)

20   Plaintiff filed a timely request for hearing on September 15, 2007, and received a hearing
21   before ALJ Helen Francine Strong, (hereinafter "the ALJ"), on June 4, 2009. (Tr. 23, 23-75, 90.)
22   The ALJ received testimony from plaintiff, a vocational expert, and a medical expert. (Tr. 23-
23   75.) On July 21, 2009, the ALJ issued a written decision, finding plaintiff "not disabled." (Tr. 21,
24   11-21.)

26   The ALJ made specific findings of fact and conclusions of law. (Tr. 16-21.) The ALJ
     found at step one of the sequential disability evaluation that plaintiff had not engaged in

substantial activity since March 5, 2007, the amended onset date. At step two, the ALJ found that

plaintiff had the severe impairments of a history of kidney infections, lupus, and a depressive

disorder. (Tr. 16.) Next, the ALJ found that plaintiff had the residual functional capacity to

perform light work, except that she should not be exposed to extreme cold. (Tr. 17.) In making

this determination, the ALJ discounted medical evidence from treating medical sources Dr.

Robert Velasco Jr., M.D. ("little weight", Tr. 18), Dr. Philip Buenvenida, M.D. ("not given much

weight," Tr. 18; "scant weight," Tr. 19), and, Dr. Victoria McDuffee, Ph.D. ("considered, but

[discounted]" Tr. 19), in favor of a unsigned report on a State Disability Determination Service

form. (Tr. 19, 276-383.)

After finding that there existed jobs in the national economy in significant numbers that

plaintiff could perform, (Tr. 20), the ALJ concluded that plaintiff had not been under a disability

from March 5, 2007, through the date of the decision, July 21, 2009 (Tr. 21.)

Plaintiff's request for review by the Appeals Council (Tr. 9) was denied on January 27,

2010 (Tr. 1), making the July 21, 2009 written decision by the ALJ the final decision subject to

judicial review. On February 11, 2010, plaintiff filed a complaint against the Commissioner of

the Social Security Administration seeking review of the July 21, 2009 written decision of the

ALJ. (See ECF No. 3.)

On June 21, 2010, in her opening brief, plaintiff contends that the determination that she

is not disabled is not supported by substantial evidence, based on the following:

1) The ALJ failed to consider properly the medical evidence and formulated a RFC not
   supported by the medical evidence.

2) The ALJ failed to consider properly the evidence and testimony provided by plaintiff.

3) The ALJ failed to incorporate all of plaintiff's relevant limitations into hypothetical
   questions posed to the vocational expert.

4)  The job numbers testified to by the vocational expert are not based on substantial evidence.

(See ECF No. 18, p. 5.)

STANDARD OF REVIEW

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (citing Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); see also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing Tidwell, 161 F.3d at 601). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quoting Davis v. Heckler, 868 F.2d 323, 325-26 (9th Cir. 1989)); see Richardson v. Perales, 402 U.S. 389, 401 (1971).

DISCUSSION

1)  The ALJ failed to consider properly the medical evidence and formulated a RFC not supported by the medical evidence.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with other substantial evidence in the case record." Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (citing SSR 96-2p, 1996 SSR LEXIS 9); see also 20 C.F.R. § 416.902 (nontreating physician is one without "ongoing treatment relationship"). The decision must "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the [] opinion." SSR 96-2p, 1996 SSR LEXIS 9.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990)); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) ("the ALJ erred in failing to meet, either explicitly or implicitly, the standard of clear and convincing reasons required to reject an uncontradicted opinion of an examining psychologist") (citing Lester, supra, 81 F.3d at 830).  Even if a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record."  Lester, supra, 81 F.3d at 830-31 (citing Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995)). In addition, the ALJ must explain why her own interpretations, rather than those of the doctors, are correct. Reddick v. Chater, 157 F.3d 715, 831 (9th Cir. 1998) (citing Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).

However, the ALJ "need not discuss *all* evidence presented." <u>Vincent on Behalf of Vincent v. Heckler</u>, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam).  The ALJ must only explain why "significant probative evidence has been rejected." <u>Id</u>. (*quoting* <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  <u>Lester</u>, <u>supra</u>, 81 F.3d at 830.  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, <u>supra</u>, 81 F.3d at 830 (citations omitted); <u>see also</u> 20 C.F.R. § 404.1527(d).  "In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, legitimate reasons that are supported by substantial evidence in the record." <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing* <u>Lester</u>, <u>supra</u>, 81 F.3d at 831).

A review of the ALJ's ruling regarding each of the physicians' conclusions leads this Court to the conclusion that the medical evidence was not properly evaluated.

    a.  Dr. Robert A. Velasco Jr., M.D., treating physician, January 27, 2007 – April 18, 2007.

Dr. Robert A. Velasco Jr., M.D., (hereinafter "Dr. Velasco"), treated and examined plaintiff on January 27, 2007 (Tr. 593); January 31, 2007 (Tr. 592); March 19, 2007 (Tr. 585); March 27, 2007 (Tr. 584); March 31, 2007 (Tr. 583); and, April 18, 2007 (Tr. 582). These examinations usually included all of the following: Dr. Velasco's assessment of plaintiff's subjective complaints' completion of diagnostic tests' Dr. Velasco's report of objective findings following examination, his assessment and diagnoses, and, his plan to help plaintiff. (<u>See</u> Tr. 582-85, 592-93.) On March 27, 2007, Dr. Velasco also filed out a Physical Evaluation form. (<u>See</u> Tr. 586-89.)

1    Dr. Velasco's opinions include references to medical opinions or treatment by other

2 physicians, including an April 18, 2007 plan that "treatment [is] ongoing / await specialist

3 recommendation prior to work VOC program," and a March 19, 2007 reference to "Dr. Andrew

4 J. Holman['s] Dx [diagnosis] [of] SLE [on] 3/13/07." (Tr. 582, 585.) Dr. Velasco's evaluations

5 include references to plaintiff's diagnosis as "Systemic Lupus E[rythematosus]" (see Tr. 581), or

6 "SLE" (See Tr. 582, 585). In his Physical Evaluation form, (see Tr. 586-89), Dr. Velasco opines

7 that plaintiff is limited due "to weakness and shortness of breath," and diagnoses plaintiff with

8 Raynaud's Syndrome in her fingers and "possible systemic Lupus E." (Tr. 588.) Dr. Velasco

9 rates both of these diagnoses as "severe," and opines that plaintiff's overall work level is

10 "severely limited." (Id.) Dr. Velasco also opines that plaintiff was not able to participate in pre-

11 employment activities, due to her "recurrent hospitalization, weakness, [and] shortness of

12 breath." (Tr. 589.)

13

14    Regarding the opinion evidence by Dr. Velasco, the ALJ noted: "On March 27, 2007,

15 Robert Velasquo, Jr., M.D., (sic) reported that [plaintiff] was 'severely limited' (internal citation

16 to exhibit 16F; 6-20); this assessment was not predicated on a reference to clinical findings, and

17 it is given little weight." (Tr. 18.)

18

19    The ALJ appears to have reviewed only the March 27, 2007 report by Dr. Velasco. The

20 ALJ fails to mention evaluations and opinions by Dr. Velasco on January 27, 2007; January 31,

21 2007; March 19, 2007; March 27, 2007; March 31, 2007; and, April 18, 2007. (See Tr. 592-93,

22 582-85). Therefore, the Court cannot assess whether the ALJ failed to review this opinion

23 evidence, or whether the ALJ rejected this other aspect of Dr. Velasco's opinion evidence

24 without comment. In either event, the matter must be remanded for further review.

In addition, the only reason given by the ALJ to discount Dr. Velasco's opinion was that it "was not predicated on a reference to clinical findings." (Tr. 18.) As can be seen by the record, the Court's previous discussion of Dr. Velasco's opinion, see supra, pp. 6-7, and the many clinical findings referenced in Dr. Velasco's opinion, this conclusion by the ALJ is not supported by substantial evidence in the record. As a treating physician, even if Dr. Velasco's opinion is contradicted by other evidence in the record, his opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, supra, 81 F.3d at 830-31. Therefore, for the aforementioned reasons, the Court concludes that the ALJ committed legal error in her evaluation of the medical opinion evidence supplied by Dr. Velasco.

   b.   Dr. Philip Buenvenida, M.D., treating physician, June 5, 2007 – April 28, 2009

   Dr. Philip Buenvenida, M.D., (hereinafter "Dr. Buenvenida"), examined and treated plaintiff on June 13, 2007. (Tr. 722-23.) He reported plaintiff's subjective complaints, including "chest pain and shortness of breath" (Tr. 722); conducted a physical examination (Tr. 723); made observations and assessments, and provided for a treatment plan for plaintiff (id.). Similarly, Dr. Buenvenida examined and treated plaintiff on many more occasions, including on June 20, 2007 (Tr. 719-20); June 18, 2007 (Tr. 717-18); August 22, 2007 (Tr. 715-16); September 25, 2007 (Tr. 713-14); October 4, 2007 (Tr. 711-12); October 31, 2007 (Tr. 709-10); December 21, 2007 (Tr. 705-06); February 19, 2008 (Tr. 702-03); March 6, 2008 (Tr. 699-700); March 13, 2008 (Tr. 697-98); May 7, 2008 (Tr. 695-96); June 18, 2008 (Tr. 693-94); August 19, 2008 (Tr. 691-92); September 18, 2008 (Tr. 689-90); November 29, 2008 (Tr. 687-88): March 10, 2009 (Tr. 682-83); April 7, 2009 (Tr. 678-79); and on April 28, 2009 (Tr. 676-77). The Court has reviewed these evaluations and for every single one of these examinations, Dr. Buenvenida reported plaintiff's subjective complaints, conducted a physical examination, made objective observations and assessments, and provided for a treatment plan for plaintiff.

1   The opinion of Dr. Buenvenida in his examination reports includes reports of plaintiff's

2   chest pain or other pain (Tr. 678, 682, 687, 689, 690, 691, 693, 695, 697, 699, 702, 705, 706,

3   713, 715, 717, 718, 719, 722, 720), including notations of "sharp, stabbing pain" (Tr. 682),

4   "multiple bilat[eral] pain" (Tr. 688), "pain multiple joints" (Tr. 688, 700, 712) and "groin area,

5   shoulders, neck and hands pain" (Tr. 693). Dr. Buenvenida also notes plaintiff's fatigue (Tr. 693,

6   698); dizziness (Tr. 691, 693, 714): and, vomiting (Tr. 691, 699), including "3x in one day" (Tr.

7   699). Based on his physical examination of plaintiff, Dr. Buenvenida observed tenderness and

8   swelling (Tr. 712). Finally, Dr. Buenvenida made multiple assessments and diagnoses of lupus,

9   "systemic lupus"  or "SLE" (Tr. 679, 683, 686, 688, 692, 696, 698, 700, 703, 720, 725), as well

10  as depression (Tr. 683, 692, 694, 696, 700, 718).

11  In addition to the opinion and other medical evidence contained in Dr. Buenvenida's

12  examination reports discussed above, Dr. Buenvenida also provided his responses on a

13  Documentation Request for Medical/Disability Condition fill-in form in July, 2007; March, 2008

14  and February, 2009. In his July 18, 2007 form, Dr. Buenvenida states that plaintiff has systemic

15  lupus erythematosus, depression, and chronic back, abdominal and joint pain. (Tr. 626.) On his

16  July 18, 2007 form, he notes that plaintiff has "a progressive systemic disease that involves [her]

17  skin system, heart [and] kidney," and results in limitations on plaintiff's "lifting, pulling,

18  pushing, walking, standing, etc." (Id.) He indicates that plaintiff is unable to participate in

19  activities related to preparing for and looking for work. (Id.) Finally, in this July, 18, 2007 report,

20  Dr. Buenvenida opines that plaintiff's condition is permanent, and that she needs further

21  assessment with regards to her depression. (Tr. 627.)

22  In Dr. Buenvenida's March 13, 2008 evaluation form, he indicated that plaintiff has

23  systemic lupus erythematosus, depression, and chronic multiple joint points and chronic fatigue.

(Tr. 624.) He further indicated that plaintiff could spend, at most, 10 hours a week walking, bending, lifting, or engaging in repetitive motion. (Id.) He also opined that she has limitations in her ability to interact with people. (Id.) Regarding lifting and carrying, he opined that she was limited to sedentary work. (Id.) In his March 13, 2008 evaluation form, Dr. Buenvenida again concluded that plaintiff's condition was permanent. (Tr. 625.)

Finally, on Dr. Buenvenida's February 7, 2009 evaluation form, he indicated his diagnoses of plaintiff's "rheumatoid arthritis and systemic lupus erthematous," and indicated his opinion that they were "severe." (Tr. 667). Dr. Buenvenida also indicated that plaintiff's overall work level was "severely limited," and that she had restricted mobility, agility or flexibility balancing, bending, climbing, crouching, handling, kneeling, pulling, pushing, reaching, sitting and stooping. (Id.) Dr. Buenvenida indicated his objective findings based on physical examination of "pain and tenderness" in plaintiff's "hands, wrists, elbows, shoulders, knees, hips [and] ankles." (Tr. 666.) He observed plaintiff's "shuffling limps," and her "high tendon reflexes bilat." (Id.)

Regarding Dr. Buenvenida's medical opinion evidence, the ALJ included the following in her decision:

> Philip Buenvenida, M.D., reported in July 2007 and March 2008 that [plaintiff] could perform sedentary work, but she was unable to sustain work activity more than 10 hours a week (internal citation to exhibit 20F). These opinions were on check-box forms with only a brief statement of her impairments, and no references of clinical support. Turning to Dr. Buenvenida's reports, [plaintiff]'s examination did not show particularly significant findings (internal citation to exhibit 25F: 19-50). These reports are likewise not given much weight.
> .  .  .  .
> Dr. Buenvenida prepared another report in February 2009. He thought [plaintiff] was 'severely limited,' unable to stand/walk or lift at least 2 pounds (internal citation to exhibit 23F). This is again considered, but like his other reports was a generalized series of comments without a description or clinical support or other findings to support it. [Plaintiff]'s medical reports show that

she has normal gait, stance, motor functioning, and sensation (exhibit 22F;9), inconsistent with Dr. Buenvenida's assessment. And his own treatment notes show that [plaintiff] presented within normal limits without significant abnormal physical findings (internal citation to exhibit 25F:1-18). His report is given scant weight.

(Tr. 18, 19.)

The first reason stated by the ALJ for her rejection of the medical evidence provided by Dr. Buenvenida is that his July 18, 2007 and March 13, 2008 opinions were on "check-box forms with only a brief statement of her impairments, and no references of clinical support." (Tr. 18.) Providing medical opinions and observations through the use of check box forms, in and of itself, is not a sufficient reason to reject the opinion. Further, Dr. Buenvenida provided a number of hand written notations that demonstrate he was well aware of plaintiff's condition. On Dr. Buenvenida's July 18, 2007 form, he notes that plaintiff has "a progressive systemic disease that involves [her] skin system, heart [and] kidney." (Tr. 626.) In addition, on all of the forms, Dr. Buenvenida fills in all of the sections, often with hand-written notations included. It is unclear where on these forms Dr. Buenvenida was supposed to include additional "references of clinical support." As the record includes approximately fifty pages of clinical evaluations and reports by Dr. Buenvenida, many of which have been discussed previously, see supra, pp. 8-10, and many of which include clinical support for his opinion as reported on these "check-box" forms, this conclusion by the ALJ is not supported by substantial evidence in the record as a whole. See Bayliss, supra, 427 F.3d at 1214 n.1.

Regarding Dr. Buenvenida's February 7, 2009 evaluation form, the ALJ faulted this opinion as "a generalized series of comments without a description or clinical support or other findings to support it." (Tr. 19.) In his February 7, 2009 report, Dr. Buenvenida indicated his objective findings were based on physical examination of "pain and tenderness" in plaintiff's

1
2
3
4
5
6
7
8
9
10

"hands, wrists, elbows, shoulders, knees, hips [and] ankles" (Tr. 666), and observed plaintiff's "shuffling limps," and her "high tendon reflexes bilat." (Id.) In addition, this Court has just discussed a similar contention by the ALJ regarding "brief statement[s] of her impairments, and no references of clinical support." (Tr. 18; see also, supra, p. 11.) For the reasons just discussed, and based on a review of the record, including the February 7, 2009 report, the Court concludes that this finding by the ALJ regarding the February 7, 2009 report as "a generalized series of comments without a description or clinical support or other findings to support it" (Tr. 19), is not supported by substantial evidence in the record as a whole. See Bayliss, supra, 427 F.3d at 1214 n.1; see also, supra, p. 11.

11
12
13
14
15
16
17
18
19
20
21

    The ALJ provides two other reasons to give "scant weight" to Dr. Buenvenida's February 7, 2009 evaluation form report. The first is a citation to an August 14, 2007 report from plaintiff's rheumatologist that her gait was "within normal limits." (See Tr. 638.) The second is the ALJ's conclusion that Dr. Buenvenida's "own treatment notes show that [plaintiff] presented within normal limits without significant abnormal physical findings." (Tr. 19.) The Court recognizes that plaintiff's rheumatologist did note that on one occasion, on August 14, 2007, plaintiff's gait appeared "within normal limits". However, as already discussed, the Court also notes the existence of many "significant abnormal physical findings" throughout Dr. Buenvenida's treatment reports. (See Tr. 676 – 725; see also, supra, pp. 8-10.)

22
23
24
25
26

    For these reasons, and based on a review of the relevant record, including the opinion evidence by Dr. Buenvenida, the Court concludes that the ALJ's decision to give "scant weight" to Dr. Buenvenida's February 7, 2009 report is not supported by substantial evidence in the record as a whole. See Bayliss, supra, 427 F.3d at 1214 n.1.

1    Finally, the ALJ gives a single reason for not giving much weight to over twenty

2  examination reports by Dr. Buenvenida from June 5, 2007 through April 28, 2009: "Turning to

3  Dr. Buenvenida's reports, [plaintiff]'s examination did not show particularly significant findings

4  (internal citation to exhibit 25F: 19-50)." The Court already has discussed these examination

5  reports by Dr. Buenvenida, see supra, pp. 8-10. Not only does the Court find that this conclusion

6  by the ALJ regarding Dr. Buenvenida's opinion evidence is not supported by substantial

7  evidence in the record as a whole, but also, the Court finds that significant probative evidence in

8  Dr. Buenvenida's opinion was not mentioned by the ALJ in her decision, such as Dr.

9  Buenvenida's diagnoses of depression on July 18, 2007; March 6, 2008; May 7, 2008; June 18,

10  2008; August 19, 2008; and, March 10, 2009  (Tr. 683, 692, 694, 696, 700, 718).

11    The ALJ must explain why "significant probative evidence has been rejected." See

12  Vincent, supra, 739 F.2d at 1394-95. In addition, as a treating physician, even if Dr.

13  Buenvenida's opinion is contradicted by other evidence in the record, his opinion "can only be

14  rejected for specific and legitimate reasons that are supported by substantial evidence in the

15  record." Lester, supra, 81 F.3d at 830-31. Therefore, for the aforementioned reasons, the Court

16  concludes that the ALJ committed legal error in her evaluation of the medical opinion evidence

17  supplied by Dr. Buenvenida.

18        c.  Dr. Iftikhar Chowdhry, M.D., treating physician, August 14, 2007 - September 16,
            2008

19    Dr. Iftikhar Chowdhry, M.D. (hereinafter "Dr. Chowdhry") examined and treated

20  plaintiff on August 14, 2007. (Tr. 635-40.) He noted plaintiff's many subjective complaints,

21  including bilateral hand swelling and pains; "diffuse muscle and joint aches and pains; and has

22  been having severe fatigue and tiredness." (Tr. 636.) He also noted that plaintiff had been

23  suffering "progressively increased musculoskeletal pains." (Id.) Dr. Chowdhry noted his

1    objective finding on examination that plaintiff "has multiple tender points o[n] her body," (Tr.

2    638) and diagnosed plaintiff with inflammatory arthritis from "Systemic Lupus Erythematosus"

3    and depression, among other conditions. (Tr. 635.)

4         Dr. Chowdhry also examined and treated plaintiff on September 13, 2007 (Tr. 733). He

5    reviewed multiple laboratory results of plaintiff, updated her medications, including "Paxil, 40

6    mg," and again diagnosed plaintiff with inflammatory arthritis from "Systemic Lupus

7    Erythematosus" and depression, among other conditions. (Id.) Dr. Chowdhry also examined and

8    treated plaintiff on October 11, 2007; June 9, 2008; and, September 16, 2008, and again made

9    the same diagnoses. (Tr. 629, 632, 732.)

10        Regarding Dr. Chowdhry's medical opinion evidence, the ALJ included the following in

11   her decision:

12
13            [Plaintiff] had another rheumatology consult in August, 2007. She reported
              ongoing fatigue and some edema in her extremities. She had some tender
14            points, but her examination was otherwise within normal limits. She was
              diagnosed with lupus (SLE) with inflammatory arthritis, Raynaud's symptoms,
15            and pleurisy (internal citation to exhibit 5F:18-20). [Plaintiff] was treated with
              a regimen of prednisone and other medication. [Plaintiff] also had developed
16            occasional chest pain, associated with pericarditis from her lupus (internal
              citation to exhibit 17F). This condition later resolved.
17            On August 14, 2007, [plaintiff] was examined by her treating doctor, Iftikhar
              Chowdhry, M.D. She reported ongoing hand pain and swelling, myofacial pain
18            in various joints, and fatigue. Her examination was essentially within normal
              limits (internal citation to exhibit 22F:9-10), suggesting that [plaintiff] was not
19            particularly limited.

20
21   (Tr. 18-19.)

22
23        It is not clear what weight the ALJ gives to the opinion by treating physician Dr.

24   Chowdhry. (See id.) However, based on a review of the opinion of Dr. Chowdhry, and on a

25   review of the relevant record, the Court concludes that the ALJ's conclusion that plaintiff's

26

ORDER - 14

"examination was essentially within normal limits" and the ALJ's implication from this report "that [plaintiff] was not particularly limited" is not supported by substantial evidence in the record as a whole.

      d.  State Disability Determination Service assessment

      Regarding state agency medical consultants, the ALJ is "required to explain in h[er] decision the weight given to such opinions." <u>Sawyer v. Astrue</u>, 303 Fed. Appx. 453, 455, 2008 U.S. App. LEXIS 27247 at **3 (9th Cir. 2008) (citations omitted) (unpublished opinion) ("[t]he ALJ's failure to consider the opinions of state agency consultants Salinas and Dr. Pritchard is not harmless  .  .  .  .  the error here is directly relevant to the ultimate issue"). According to Social Security Ruling (hereinafter "SSR") 96-6p, "[a]dministrative law judges  .  .  .  . **must** explain the weight given to the opinions [of state agency medical consultants] in their decisions." SSR 96-6p, 1996 WL 374180 at *2 (emphasis added).

      In her decision, the ALJ included the following:

> The State Disability Determination Service (DDS) reviewed [plaintiff's] record and concluded that she could perform a full range of light work, with a need to avoid exposure to extreme cold (internal citation to exhibit 6F). This assessment appears consistent with the medical record discussed above.

(Tr. 19.) Although it is clear that the ALJ views this assessment favorably, it is not clear what specific weight it was given by the ALJ. An ALJ is "required to explain in h[er] decision the weight given to such opinions," and her failure to do so here is legal error. <u>Sawyer</u>, <u>supra</u>, 303 Fed. Appx. at 455, 2008 U.S. App. LEXIS 27247 at **3; <u>see also</u> SSR 96-6p, 1996 WL 374180 at *2.

      In addition, it is clear that this particular assessment should not be given much weight, if any at all. First, it is unsigned. (<u>See</u> Tr. 383.) It is difficult to evaluate an opinion when one does not know if that opinion is offered by a medical doctor (M.D.), a clinical psychologist, (B.A.,

1  B.S., Psy.D., or Ph.D.) a doctor in psychology (Ph.D.) or perhaps an assistant without any

2  medical training at all. Secondly, this assessment appears to have been prepared on June 18,

3  2007, without the benefit of much of the medical evidence already discussed by the Court. <u>See</u>

4  <u>supra</u>, sections 1., b (Dr. Buenvenida, June 5, 2007 – April 28, 2009); and, 1., c (Dr. Chowdhry,

5  August 14, 2007 - September 16, 2008). Finally, this un-attributed assessment includes the

6  conclusion that plaintiff "does not display a full Dx [diagnosis] for SLE." (Tr. 383.)

7          While this Court already has noted that this un-attributed conclusion regarding the lack of

8  a full diagnosis of SLE is made without the benefit of much of the medical evidence already

9  discussed, <u>see supra</u>, sections 1., b and c, the Court also notes that it was made with the benefit of

10  Dr. Velasco's report, also discussed above, <u>see supra</u>, section 1., a. Dr. Velasco's report includes

11  multiple references to plaintiff's diagnosis as "Systemic Lupus E[rythematosus]" (Tr. 581), or

12  "SLE" (Tr. 582, 585), and specifically indicates that "Dr. Andrew J. Holman Dx [diagnosed]

13  SLE [on] 3/13/07" (Tr. 585). Based on the aforementioned reason, and based on a review of the

14  relevant record, the Court concludes that the ALJ's finding regarding the assessment by the State

15  Disability Determination Service being "consistent with the medical record" is not supported by

16  substantial evidence in the record as a whole.

17          e.  Dr. Victoria McDuffee, Ph.D., examining licensed clinical psychologist (February 12,
           2009)

18          The ALJ "has an independent 'duty to fully and fairly develop the record.'" <u>Tonapetyan</u>

19  <u>v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (<i>quoting</i> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288

20  (9th Cir. 1996)). The ALJ's "duty exists even when the claimant is represented by counsel."

21  <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983) (per curiam) (<i>citing</i> <u>Driggins v. Harris,</u> 657

22  F.2d 187, 188 (8th Cir. 1981)).  This duty is "especially important when plaintiff suffers from a

23  mental impairment." <u>Delorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991)). This is "[b]ecause

1    mentally ill persons may not be capable of protecting themselves from possible loss of benefits

2    by furnishing necessary evidence concerning onset." Id. (*quoting* Social Security Regulation 83-

3    20). However, the ALJ's duty to supplement the record is triggered only if there is ambiguous

4    evidence or if the record is inadequate to allow for proper evaluation of the evidence.  Mayes v.

5    Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001); Tonapetyan, 242 F.3d at 1150.

6  

7          On February 12, 2009, Dr. Victoria McDuffee, Ph.D., licensed clinical psychologist,

8    (hereinafter "Dr. McDuffee") conducted a thorough Mental Status Examination of plaintiff. (Tr.

9    669-675.) Dr. McDuffee noted that plaintiff's medical history included diagnoses of "systemic

10   lupus, depression, Raynauds Disease [and] arthritis." (Tr. 669.) Dr. McDuffee also noted

11   plaintiff's subjective complaints of "severe pain daily  . . . .  low motivation, hopelessness,

12   pessimism, low motivation, loss of interest/pleasure, increased sleep, [] fear, [p]assive suicidal

13   ideation w[ith] plan but no intent [because] living with her son [] prevents her from hurting

14   herself." (Id.)

15  

16         Dr. McDuffee conducted multiple objective tests and examinations of plaintiff in order to

17   assess plaintiff's mental status. (Tr. 674.) Plaintiff demonstrated some limitation in cognitive

18   areas of functioning, such as impaired calculation, reflecting an impaired ability to concentrate;

19   as well as impaired memory when attempting to complete immediate recall tasks and impaired

20   memory when attempted to complete tasks requiring recent memory skills, reflecting overall

21   impaired memory abilities. (Tr. 672, 674.) Plaintiff also had thoughts about suicide, reflecting

22   impaired thought content. However, plaintiff also demonstrated normal abilities in some areas of

23   cognitive functioning, including her perception ability; her ability to orient to where she was

24   located and to other persons in the room; and, her ability to exercise judgment and make

25  

26  

1   decisions. (Tr. 672, 674.) Therefore, Dr. McDuffee assessed the cognitive aspects of plaintiff's

2   mental ability as "no cognitive impairment." (Tr. 671, 672, 674.)

3        Plaintiff did not do as well on the behavioral and social aspects of her Mental Status

4   Examinations and tests. (See Tr. 671, 672, 674.) Plaintiff's speech patterns were slow and soft,

5   and she exhibit retarded and slumped psychomotor movement and posture. (Tr. 674.) Plaintiff

6   was tearful, depressed and reported "avoiding her friends, remaining in bed all day." (Tr. 672,

7   674.) Plaintiff was unable to explain proverbs, suggesting an impaired ability in abstract

8   reasoning. (Tr. 674.) Based on Dr. McDuffee's objective observations, as well as the results of

9   plaintiff's tests and examinations, Dr. McDuffee assessed plaintiff's depression as "severe," the

10  highest level of impairment. (Tr. 671, 674.) Dr. McDuffee opined that plaintiff's limitations in

11  her ability to relate appropriately to co-workers and supervisors was severe; her limitations in her

12  ability to interact appropriately in public contacts was severe; her ability to respond appropriately

13  to and tolerate the pressures and expectations of a normal work setting was severe; and, her

14  ability to control physical or motor movements and maintain appropriate behavior was severe.

15  (Tr. 672.) Dr. McDuffee rated plaintiff's Global Assessment of Functioning ("GAF") at 35. (Id.)

16       Dr. McDuffee diagnosed plaintiff with major depressive disorder, severe; generalized

17  anxiety disorder; and pain disorder. (Tr. 671.) Dr. McDuffee concluded that plaintiff's functional

18  impairments would last for at least a year; that plaintiff's prognosis was "poor;" and that plaintiff

19  likely would be unable to return to work. (Tr. 673, 675.)

20       On May 1, 2009, plaintiff provided the ALJ with Dr. McDuffee's opinion report and

21  asked for a finding of full disability. (See May 1, 2009 letter from plaintiff to the ALJ, Appendix

22  B to Plaintiff's Opening Brief, ECF No. 18, pp. 28-30.) On June 4, 2009, at plaintiff's hearing,

23  plaintiff asserted disability on the basis of both physical and mental conditions, including major

1   depression. (Tr. 36-37.) The ALJ addressed her "concern" regarding "mental impairments," and

2   stated that she had concerns about "durational problems." (Tr. 37.) The ALJ stated that she had

3   been viewing the case as one "involving physical impairments." (Id.) The ALJ referenced the

4   February 12, 2009 report by Dr. McDuffee and further stated:

5
6            I would certainly be concerned - - I want to see a little underlying or
             foundational documentary on this, too. I don't know whether that was the GAF
7            score that she had on just one day . . . . I'm a little concerned about your
             introducing this from the mental side, because, again, this is something that we
8            have not seen previously in the record, nor has DDS had an opportunity to
             evaluate this case."
9
10  (Tr. 37-38.)

11          Regarding Dr. McDuffee's opinion and the medical evidence regarding plaintiff's mental

12  abilities, the ALJ concluded that "in activities of daily living and social functioning, [plaintiff]

13  has mild difficulties" (Tr. 17), and also included the following:

14           [Plaintiff]'s medical record also shows some diagnoses of depression (internal
             citation to exhibit 22F). Her treating doctor found no cognitive impairment
15           (internal citation to exhibit 22F;1). Victoria McDuffee, Ph.D., performed a
             psychological assessment of [plaintiff] on February 13, 2009. Dr. McDuffee
16           diagnosed a depressive disorder, anxiety disorder, and pain disorder with
             marked limitations in social functioning and performing more than simple
17           tasks (internal citation to exhibit 24F). This report is considered, but
             [plaintiff]'s social limitations were apparently based on subjective reports; her
18           presentation was slightly depressed and slowed, but her functioning was
             otherwise intact and her mini mental status examination showed only a mild
19           cognitive limitation (internal citation to exhibit 24F;6). To be fair, [plaintiff]
             apparently had some recall problems, and a restriction to simple, repetitive
20           tasks may be appropriate. [Plaintiff] has reported social activity with shopping,
             and asserted that she got along with others (internal citation to exhibits 8E; 7;
21           9E). She has no social restrictions.

22  (Tr. 19.)
23
24          The Court already has discussed Dr. McDuffee's report, containing, among other things,

25  notations of plaintiff's subjective complaints; the results of examinations conducted by Dr.

26  McDuffee; Dr. McDuffee's objective evaluations and observations; as well as Dr. McDuffee's

    assessments based on the subjective and objective evidence. See supra, section 1., e. For

example, the Court already noted that Dr. McDuffee assessed plaintiff as exhibiting slow and soft speech patterns, and retarded and slumped movement and posture. (See also Tr. 674.) The Court also notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." Id. at 4 (emphasis in original). In addition, the report here by Dr. McDuffee includes a note to the evaluator, instructing her to "[b]ase the degree of limitation on reports by the individual and others concerning behavior over the past month and interpretation of appropriate tests, along with your own observations during the interview." (Tr. 672.)

Therefore, the Court concludes that the ALJ's finding that plaintiff's "social limitations were apparently based on subjective reports," inappropriately minimizes the objective observations of Dr. McDuffee as well as the objective tests and examinations she conducted, and implies that Dr. McDuffee did not know how to conduct a Mental Status Examination or how to follow the instructions on the form. It also may reflect a potential misunderstanding on the part of the ALJ regarding the Mental Status Examination, as discussed further below, see infra, pp. 21-23.

In addition, the ALJ characterizes Dr. McDuffee's report in part by stating that "Dr. McDuffee diagnosed a depressive disorder, anxiety disorder, and pain disorder with marked limitations in social functioning and performing more than simple tasks." (Tr. 19.) However, nowhere in Dr. McDuffee's report did she opine that plaintiff suffered any "marked" limitations

1    in social functioning. (See Tr. 669-675.) Rather, Dr. McDuffee repeatedly concluded that

2    plaintiff suffered "severe" limitations in social functioning, finding her more limited than stated

3    by the ALJ, including the four specific areas discussed by the Court above, see supra, p. 18. (Tr.

4    671, 672.) This conclusion by the ALJ regarding Dr. McDuffee's report clearly is erroneous.

5    Finally, the ALJ discounts limitations resulting from plaintiff's behavioral and social

6    impairments, with multiple references to plaintiff's "only [] mild" cognitive limitations or "no

7    cognitive impairment." (Tr. 19.) This suggests a misunderstanding on the part of the ALJ

8    regarding how to interpret the results of the Mental Status Examination, and also demonstrates

9    why such examinations generally are conducted by medical professionals skilled and

10   experienced in psychology and mental health. Although "anyone can have a conversation with a

11   patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation'

12   to a 'mental status examination'." Trzepacz, supra, The Psychiatric Mental Status Examination 3.

13   A mental health professional is trained to observe patients for signs of their mental health not

14   rendered obvious by the patient's subjective reports, in part because the patient's self-reported

15   history is "biased by their understanding, experiences, intellect and personality" (id. at 4), and, in

16   part, because it is not uncommon for a person suffering from a mental illness to be unaware that

17   her "condition reflects a potentially serious mental illness." Van Nguyen v. Chater, 100 F.3d

18   1462, 1465 (9th Cir. 1996).

19   The Mental Status Examination conducted by Dr. McDuffee contained two aspects:

20   cognitive and behavioral. (See Tr. 674.) This Court assumes that this distinction is not arbitrary:

21   [In my opinion, this section seems to be more a medical opinion than is necessary to reach a

22   legal conclusion.] Dr. McDuffee, a trained clinical psychologist, opined that although plaintiff

23   suffered from "no cognitive impairment," she nevertheless suffered from "severe" depression,

ORDER - 21

1
2
3
4
5
6
7
8
9
10
11

disabling her from work. When an ALJ seeks to discredit a medical opinion she must explain why her own interpretations, rather than those of the doctors, are correct. Reddick, supra, 157 F.3d at 831. Here, to diminish the importance of Dr. McDuffee's opinion regarding plaintiff's social or behavioral limitations on the basis that plaintiff suffers from "only [] mild" cognitive limitations or "no cognitive impairment," is not a sufficient explanation as to why the ALJ's interpretation over that of Dr. McDuffee, is correct. (Tr. 19.) In addition, the Court already has noted the multiple diagnoses in the record by plaintiff's treating physicians regarding plaintiff's depression, consistent with the medical opinion of Dr. McDuffee. See supra, sections 1., b-c. Dr. Buenvenida made multiple assessments and diagnoses of depression (Tr. 683, 692, 694, 696, 700, 718), as did Dr. Chowdhry (Tr. 629, 632, 635, 732, 733).

12
13
14
15
16
17
18
19
20
21
22
23

If an ALJ finds that the medical evidence regarding a mental impairment is ambiguous or if the record is inadequate to allow for proper evaluation of the evidence, the ALJ's duty to supplement the record is triggered.  Mayes, supra, 276 F.3d at 459-60; see also, Tonapetyan, supra, 242 F.3d at 1150. In this instance, as the ALJ made a conclusion regarding plaintiff's mental impairments that differed from that of Dr. McDuffee, the only qualified mental health professional to render any medical opinion on the issue, and one that also differed from plaintiff's treating physicians, she had a duty to develop the record, and rely on additional medical evidence, not her own assessment of the medical evidence. The ALJ's evaluation of plaintiff's mental health, and her evaluation of the opinion evidence provided by Dr. McDuffee, was not supported by substantial evidence in the record as a whole.

24
25
26

For all of the above mentioned reasons, the Court concludes that the ALJ did not evaluate properly the medical evidence.

2)   The ALJ failed to consider properly the evidence and testimony provided by plaintiff.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1999) (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (citing Calhoun v. Bailar, 626 F.2d 145, 150 (9th Cir. 1980))). Nevertheless, the ALJ's credibility determinations "must be supported by specific, cogent reasons."  Reddick, supra, 157 F.3d at 722 (citing Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). If an ALJ discredits a claimant's subjective symptom testimony, the ALJ must articulate specific reasons for doing so. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  In evaluating a claimant's credibility, the ALJ cannot rely on general findings, but "'must specifically identify what testimony is credible and what evidence undermines the claimant's complaints.'"  Id. at 972 (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)); Reddick, 157 F.3d at 722 (citations omitted); Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (citations omitted). The ALJ may consider "ordinary techniques of credibility evaluation," including the claimant's reputation for truthfulness, inconsistencies in testimony, daily activities, and "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." Smolen, 80 F.3d at 1284. The decision of the ALJ should "include a discussion of why reported daily activity limitations or restrictions are or are not reasonably consistent with the medical and other evidence." SSR 95-5p 1995 SSR LEXIS 11. "[I]f a claimant 'is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations.'" Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (quoting Morgan, 169 F.3d at 600).

1    The determination of whether to accept a claimant's testimony regarding subjective

2    symptoms requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; Smolen, 80 F.3d at

3    1281 (citing Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).  First, the ALJ must determine

4    whether there is a medically determinable impairment that reasonably could be expected to cause

5    the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); Smolen, 80 F.3d at 1281-82.

6    Once a claimant produces medical evidence of an underlying impairment, the ALJ may not

7    discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of

8    objective medical evidence to fully corroborate the alleged severity of pain." Bunnell v. Sullivan,

9    947 F.2d 341, 343 (9th Cir. 1991) (en banc) (citing Cotton, 799 F.2d at 1407).  Absent

10   affirmative evidence that the claimant is malingering, the ALJ must provide "clear and

11   convincing" reasons for rejecting the claimant's testimony. Smolen, 80 F.3d at 1283-84;

12   Reddick, 157 F.3d at 722 (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996); Swenson v.

13   Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

14       The ALJ found that plaintiff had the residual functional capacity to "perform light work  .

15   .  .  .  except that she should not be exposed to extreme cold. She can perform simple, repetitive

16   tasks." (Tr. 17.) Regarding plaintiff's credibility, the ALJ included the following in her written

17   decision:

18

19           After careful consideration of the evidence, the undersigned finds that
             [plaintiff]'s medically determinable impairments could reasonably be expected
20           to cause some symptoms; however, [plaintiff]'s statements concerning the
             intensity, persistence and limiting effects of these symptoms are not credible to
21           the extent they are inconsistent with the above residual functional capacity
             assessment.
22

23   (Tr. 18.) After giving "little weight" and "scant weight" to the opinions of her treating

24   physicians (Tr. 18, 19), the ALJ then continues to discuss plaintiff's credibility:

25

26

ORDER - 24

Although [plaintiff] described daily activities that are quite limited, consistent with bed confinement (internal citation to exhibit 9E), other factors weigh against considering these allegations to be strong evidence in favor of finding [plaintiff] disabled. First, allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty. Secondly, even if her daily activities were as limited as alleged, it is difficult to attribute that degree of limitation to [plaintiff]'s medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision. Overall, [plaintiff]'s reported daily activities are outweighed by other, more persuasive, evidence in the record.

(Tr. 19.)

The first reason given by the ALJ in support of her conclusion that "other factors weigh against considering [plaintiff's] allegations to be strong evidence in favor of finding [plaintiff] disabled" was that "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." (Id.) This is a statement of general fact that bears only a small amount of relevance to plaintiff's credibility in this specific case: simply because a fact cannot be verified objectively provides little evidence to support the conclusion that the individual is not being truthful about such fact in any particular instance. This is especially true when, as in this case, the Medical Expert acknowledged plaintiff's "abnormal laboratory tests, which are quite real, and giving quite a degree of concern to the doctors taking care of her," and agreed that plaintiff's laboratory reports "support . . . . that she has a significant connective tissue or a rheumatic type disorder; in this case, lupus. Yes, she's got it." (See Tr. 63.)

The second reason given by the ALJ was that "it is difficult to attribute that degree of limitation to [plaintiff]'s medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." (Id.) First, the Court notes that the ALJ does not specify what "other reasons" to which one can attribute the degree of limitation plaintiff alleges that she suffers. Attributing the degree of limitation plaintiff alleges to "other reasons," when those "other reasons" are not specified, provides no support for the ALJ's

1    adverse credibility finding. Similarly, the "other factors discussed in this decision" cannot

2    support an adverse credibility finding as they also are unspecified.

3         The remaining support for the ALJ's conclusion regarding her credibility determination is

4    the "the relatively weak medical evidence." (Tr. 19.) The Court already had determined that the

5    ALJ did not evaluate the medical evidence properly. See supra, section 1. Therefore, this

6    improper evaluation cannot support an adverse credibility finding.

7

8         Finally, the ALJ concludes that "[o]verall, [plaintiff]'s reported daily activities are

9    outweighed by other, more persuasive, evidence in the record." (Tr. 19.) But, again, the ALJ fails

10   to identify what "other, more persuasive, evidence in the record" supports her conclusion

11   discounting plaintiff's reported daily activities. The Court also notes that the ALJ failed to

12   mention in this context that records demonstrate that plaintiff worked every year after coming to

13   the United States, from 1994 until 2007. (See Tr. 151.) This factor weighs in favor of plaintiff's

14   credibility in this case.

15

16        For the reasons just discussed, the Court concludes that the ALJ did not provide clear and

17   convincing reasons to reject plaintiff's testimony. When there is no evidence that a claimant is

18   malingering, as is the case here, the ALJ must provide "clear and convincing" reasons for

19   rejecting the claimant's testimony. Smolen, supra, 80 F.3d at 1283-84; Reddick, supra, 157 F.3d

20   at 722.

21

22      3)  The ALJ failed to incorporate all of plaintiff's relevant limitations into hypothetical
            questions posed to the vocational expert.

23        Since this case must be remanded in order to allow for a proper review of the medical

24   evidence and plaintiff's testimony, if the ALJ reaches this step in the sequential disability

25   evaluation following further consideration on remand, the ALJ will need to reconsider the issue

26   of plaintiff's limitations.

ORDER - 26

1

2

4)  The job numbers testified to by the vocational expert are not based on substantial evidence.

3

Likewise, as this case must be remanded in order to allow for a proper review of the

4

medical evidence and plaintiff's testimony, if the ALJ reaches step five in the sequential

5

disability evaluation following remand, the ALJ will need to evaluate anew this issue, as well.

6

<u>CONCLUSION</u>

7

After considering and reviewing the record, the undersigned finds that the ALJ failed to

8

evaluate properly the medical evidence and failed to evaluate properly plaintiff's credibility.

9

Therefore, following remand, the ALJ should begin at step three of the sequential disability

10

evaluation.

11

12

For the aforementioned reasons, the Court hereby REVERSES AND REMANDS this

13

case for further consideration by the Social Security Administration pursuant to sentence four of

14

42 U.S.C. § 405(g).

15

Dated this 29th day of March, 2011.

16

17

18

J. Richard Creatura
United States Magistrate Judge

19

20

21

22

23

24

25

26

ORDER - 27